**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**MIGUEL PACHECO ORTIZ**,

     Plaintiff,

     v.

**GASPAR SANCHEZ SAEZ**, police officer,
Puerto Rico Police Department, sued in his
individual capacity, *et al.*,

     Defendants.

Civil No. 11-1084 (BJM)

<u>**OPINION AND ORDER**</u>

Miguel Pacheco Ortiz ("Pacheco") sued Gaspar Sanchez Saez ("Sanchez") and another unnamed Puerto Rico Police Department officer, in their individual capacities, alleging that they deprived him of constitutional rights in violation of 42 U.S.C. § 1983 ("Section 1983"), engaged in a civil rights conspiracy in violation of 42 U.S.C. § 1985 ("Section 1985"), violated the Commonwealth constitution, and committed numerous negligent and intentional torts, all arising out of their involvement in a criminal investigation of Pacheco that began in October 2006 and culminated in his acquittal following trial in January 2010. (Docket No. 1, hereinafter "Compl.").

Before the court is Sanchez's motion to dismiss all claims under Fed. R. Civ. P. 12(b)(6). (Docket No. 9). Pacheco opposed the motion, and sought general leave to file an amended complaint. (Docket No. 14). The court denied leave to amend the complaint without prejudice to a renewed request tendering the proposed amended complaint. (Docket No. 23). Sanchez replied to Pacheco's opposition. (Docket No. 22). For the reasons that follow, Sanchez's motion to dismiss is **granted**.

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

To survive a motion to dismiss at the pleading stage, "an adequate complaint must

provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  A court parses the allegations of the complaint in two steps.  First, "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action'" are identified and completely disregarded.  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009)) (alteration marks omitted).  The remaining "[n]on-conclusory factual allegations" are then "treated as true, even if seemingly incredible."  Id.  The overall standard is only satisfied if those facts "state a plausible, not a merely conceivable, case for relief"; however, a court must not "attempt to forecast a plaintiff's likelihood of success on the merits."  Id.

## FACTUAL ALLEGATIONS

The non-conclusory factual allegations of the complaint are summarized below.

### *October-November 2006:  Initial Investigation, Charges, and Surrender*

On October 16, 2006, Pacheco was living in Orlando, Florida.  While his parents were at their home in Ponce, Puerto Rico, various police vehicles suddenly arrived.  Pacheco's father allowed officers into the home, where they told him they had been chasing Pacheco on a gray dirt bike.  Pacheco's father replied that his son did not own a gray dirt bike, making that impossible. (Compl., ¶¶ 4-5).

Officers returned the next day in an unmarked car with dark tinted windows and again inquired about Pacheco.  Pacheco's father informed the officers that Pacheco did not live there, and that he had not seen his son.  (Id., ¶ 6).  The unmarked car returned on the third day; Pacheco's parents encountered a pair of officers—one named Rosado, the other not named—standing in front of their house.  The officers repeated their inquiries about Pacheco, and received the same reply:  he did not live there.  Pacheco's parents insistently asked what the police needed with their son, to which one officer replied that something happened on October

15, 2006.  Pacheco's parents asked whether he was a suspect or an accused, to which the officers replied that they needed to ask him some questions, and left.  Pacheco's parents contacted him to inform him of the events.  (Id., ¶¶ 7-8).

On October 20, 2006, Pacheco's parents became aware of a newspaper article containing accusations linking Pacheco to the death of two men; in it, the police used the nickname "Miguelito."  Pacheco, through his parents, got in touch with an attorney who counseled him and arranged for him to come to Puerto Rico and surrender to the authorities.  (Id., ¶¶ 8-9).

*November 2006-August 2007:  House Arrest and Police Searches*

Pacheco's parents, together with two of his minor siblings, traveled to Florida, and returned with him to Puerto Rico on November 14, 2006, as Pacheco's attorney had arranged.  In the two weeks before Pacheco's return, the police kept his parents under constant surveillance, questioned their neighbors, and visited them at work; this caused them both "headaches, embarrassment, severe stress[,] and emotional pain."[1]  (Id., ¶¶ 10-11).

Pacheco's bail was first set at $600,000, and as a result he remained incarcerated for two weeks.  Following a hearing, the amount was reduced to $230,000; after posting bail, he was released under house arrest with electronic monitoring and other restrictions.  His parents' home was kept under constant surveillance over a period of ten months, and they did not leave him there alone because they feared a "police intervention."  Police twice entered the home, abruptly each time, in search of weapons that they accused Pacheco of concealing for the fugitive co-defendant Jasser Vega Ramos ("Vega").  (Id., ¶¶ 12-14).

On February 22, 2007,[2]  police arrived bearing "an Aibonito State Superior Court

---

[1] Neither of Pacheco's parents are parties to this action.
[2] Although the last sentence of this paragraph of the complaint lists dates in February 2006, the logical sequence of events, together with the first sentence of the paragraph, suggest that Pacheco meant 2007.

[S]earch Order, that had the word Ponce altered."[3]  The warrant was requested on February 13, and recounted confidential information obtained on February 7 indicating that Pacheco had been storing weapons for Vega.  Police described "the individual"[4] as "a mentally disturbed white male, fat, with a white color truck" who frequently visited Pacheco and was his friend.  The man the police described was actually the friend of a physician in Ponce.  Police fabricated the allegations in order to enter Pacheco's home.  During this time, Pacheco feared for his life and safety because of the police officers.  (Id., ¶¶ 15-17).

On March 13, 2007, Vega was arrested; "it is the first time that the name of plaintiff in its entirety was ever mentioned."[5]  In the first week of August, 2007, federal authorities arrested Pacheco while he was still under house arrest.[6]  (Id., ¶¶18-19).

### Criminal Trial and Acquittal

Pacheco began his criminal trial on December 20, 2009, charged with three counts of homicide, with 99-year sentences possible for each.  Sanchez testified falsely at trial, contradicting other witnesses' testimony regarding "technical services and the line-up procedure that was not legal."[7]  When cross-examined, Sanchez testified that he never knew Pacheco's physical description, and "never mentioned any nickname or name" identifying Pacheco.  He also testified that when he interviewed Irma Rodríguez, a municipal guard, she said she had never identified Pacheco as a suspect, never knew him, and had actually identified a different person.  He further testified that when he interviewed another person, Jonathan Echevarría, he never identified Pacheco by name, nickname, or description.  Pacheco was found not guilty of all

---

[3] It is unclear whether the order was issued by the Aibonito superior court and altered somehow to read "Ponce," or vice versa.  Regardless, I surmise that there was some kind of alteration to the name of the municipality.

[4] It is unclear if "the individual" refers to Vega, or to a third person who police claimed to have observed.

[5] I read this as alleging that no public announcement had previously used Pacheco's full name.

[6] The federal arrest is not explained or referred to again in the complaint.

[7] The complaint also states that "During the two weeks that the police were looking for plaintiff, Officer Gaspar Sanchez Saez falsely testified at trial." (Compl., ¶ 20).  The most plausible reading I make of this allegation is that Sanchez testified falsely that the police had been searching for Pacheco for two weeks prior to his surrender.

counts on January 26, 2010.  (<u>Id.</u>, ¶¶ 20-24).

*Omissions*

The defendants—Sanchez and at least one other PRPD officer—never investigated whether Pacheco lived in Orlando at the time of the homicides.  (<u>Id.</u>, ¶ 25).  They falsely charged him with "felonies, without ever finding any firearm . . . ."[8]  (<u>Id.</u>, ¶ 26).  They failed to supervise other police officers.  (<u>Id.</u>, ¶ 32).  They "did nothing to impede, discourage, or stop" any of these acts.  (<u>Id.</u>, ¶ 33).  Those officers who were supervisors failed to follow police procedures regarding Pacheco while he was on bail.  (<u>Id.</u>, ¶ 36).

## DISCUSSION

Both Sanchez and Pacheco focus their attention on the federal claim of malicious prosecution, based on alleged violations and conspiracies to violate Pacheco's Fourth and Fourteenth Amendment rights.  I begin by briefly addressing Sanchez's right to absolute immunity for his testimony at trial, and then consider his claim of qualified immunity from section 1983 liability.  I then address Pacheco's reference to a section 1985 conspiracy, and conclude by reviewing the court's supplemental jurisdiction.

## I.    Absolute Immunity for Testimony

"[A]ll witnesses, including those who give perjured testimony, are absolutely immune from civil suit under § 1983." <u>Reid v. New Hampshire</u>, 56 F.3d 332, 337 n. 11 (1st Cir. 1995) (citing <u>Briscoe v. LaHue</u>, 460 U.S. 325 (1983)).  Pacheco correctly states that Sanchez and the unnamed defendant "cannot shield any pretrial investigative work with the aegis of absolute immunity merely because they later offered the fabricated evidence or testified at trial." (Docket No. 14, p. 27) (citing <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 276 (1993)).   But Sanchez *is* absolutely immune from section 1983 damages for his testimony, and is entitled to the dismissal

---

[8] It is unclear if this is a reference to the weapon used in the homicides or to the federal arrest.

of any such claims.

## II.     **Qualified Immunity**

Sanchez argues in pertinent part that the complaint does not plausibly allege that he is connected to most of the events Pacheco now complains of, and that Pacheco fails to state a claim based on the conduct for which the complaint does allege his involvement.  Because of this, he argues he is entitled to qualified immunity from damages liability.

Qualified immunity is "an immunity from suit and not a mere defense to liability," designed to weed out "insubstantial claims" even before discovery has occurred.  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  A defendant is entitled to personal-capacity immunity where either (1) the plaintiffs fail to state a violation of a constitutional right, or (2) any such constitutional right was not "clearly established" when the alleged violation occurred. Id. at 269.

### A.      **Allegations of Sanchez's Personal Involvement**

A particular defendant's position in a state agency, standing alone, is insufficient to hold him or her liable for that agency's conduct under section 1983.  Ayala-Rodríguez v. Rullan, 511 F.3d 232, 236 (1st Cir. 2007).  Rather, a plaintiff must "establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010).  Logically, to condone or authorize conduct, the official must at least have actual or constructive notice of the violation.  Id.  But more than mere notice is required, since "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 536 (1st Cir. 2011) (quoting Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993)).  And section 1983 does not impose liability for mere negligence.  Soto-Torres v. Fraticelli, 654 F.3d 153, 157 n. 5 (1st Cir. 2011) (citing Daniels v.

<u>Williams</u>, 474 U.S. 327, 333 (1986) and <u>Billington v. Smith</u>, 292 F.3d 1177, 1190 (9th Cir. 2002)).   Importantly, this substantive requirement is not relaxed at the pleading stage; "*each* defendant's role in the [challenged] decision must be sufficiently alleged to make him or her a plausible defendant." <u>Ocasio-Hernández</u>, 640 F.3d at 16 (emphasis in original).

I organize the allegations of the complaint into three categories.  First are those alleging factual acts and omissions by Sanchez, either by name or by reference to "defendants":  that he testified about a line-up procedure, testified about interviewing two individuals, and that he never investigated the question of whether Pacheco lived in Florida in October 2006, never discovered any firearms but nonetheless charged him with felonies, never supervised other police officers, and never stopped any of the complained-of events from occurring.  (Compl., ¶¶ 20-26, 32, 33).

Second are the allegations narrating events leading up to Pacheco's homicide trial: the dirt bike chase; the questioning of Pacheco's parents; his surrender, incarceration, and release on bail; the police searches with falsified warrants; and ending with his federal arrest.  These allegations refer generally to "police officers," and at one point identify an officer named Rosado.  (<u>See</u> Compl., ¶¶ 4-19).  Importantly, none of these allegations name Sanchez as one of the officers involved.

Third are the allegations that "defendants" "maliciously prosecuted" Pacheco, carried out an "invalid arrest and detention," committed "abuse of process," and were "conspiring civilly," with "reckless and callous indifference, actions, and omissions," and taking "false and illegal actions." (<u>See</u> <u>id.</u>, ¶¶ 26-37).[9]  Despite their reference to "defendants," which Pacheco intends to mean Sanchez, I do not treat these allegations as facts, as they do "little more than assert . . .

---

[9] While some of the paragraphs I cite as part of the first two classes overlap with this range, the first step of the *Iqbal* analysis requires legal conclusions and "recitals of the elements of a cause of action" to be separated out from factual allegations.  <u>See</u> <u>Ocasio-Hernández</u>, 640 F.3d at 12.  Blending both factual and non-factual content in a single paragraph does not alter the net result:  only the facts are treated as true, not the conclusions.

legal conclusion[s] about the involvement of the . . . defendants in the underlying constitutional violation." Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009).

As I will explain in the context of each constitutional claim, there is a dearth of factual allegations and reasonable inferences to connect Pacheco with any of the incidents falling into the second category. Pacheco argues against a similar analysis in the motion to dismiss, which he says "attempts to bifurcate and separate the allegations in the complaint . . . without any inferences in the [non]movant's favor." (Docket No. 14, p. 15). But the only allegations Pacheco uses to link the first and second portions of the complaint come from the non-factual third class of allegations. Nor are the inferences drawn from Sanchez's alleged testimony themselves enough to infer that he was an "active member" of the investigation, which *would* support a "plausible inference that he was privy to information gathered by the other members of the team," bringing him closer to having plausibly committed an act, omission, or tacit authorization that would subject him to liability. Cf. Limone v. Condon,  372 F.3d 39, 50 (1st Cir. 2004).

In short, whether or not Pacheco is correct in saying that "[t]he *common-law elements* of malicious prosecution, abuse of process[,] and the other state law claims are clearly and unequivocally plead[ed]," (Docket No. 14, p. 16) (emphasis added), I must consider whether he has connected Sanchez to the *constitutional* violations. With this lens in place, I review each of the theories advanced by Pacheco in his opposition to the motion to dismiss under the two prongs of the qualified immunity analysis.

### B.    Failure to State Constitutional Violations

Pacheco argues that a cause of action for common law malicious prosecution is cognizable under section 1983 so long as it is tied to the "deprivation of a federally-protected right." (See Docket No. 14, p. 13-16) (citing Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir.

2001)).  The starting point, then, is each of the constitutional rights Pacheco asserts was violated.

Both the complaint and Pacheco's opposition are limited to claims of (1) unreasonable seizure in

violation of the Fourth Amendment and (2) deprivation of due process under the Fourteenth

Amendment.  In addition to these constituent claims, Pacheco argues that he was the victim of a

conspiracy to deprive him of those rights.

### 1. *Fourth Amendment Seizure*

First, Pacheco argues that his claim is based on a Fourth Amendment seizure "as he had

restrictions in his liberty right and his right to travel."  (Docket No. 14, p. 14).  I construe this

argument as a reference to Pacheco's conditions of release and house arrest after he posted bail.

(See Compl., ¶¶ 12-14).

Sanchez argues that any such violation cannot survive the second prong of the qualified

immunity analysis.  A right is not "clearly established" unless the boundaries of the right were

reasonably clear at the time of the violation, and if "a reasonable defendant would have

understood that his conduct violated the plaintiffs' constitutional rights" in the context of the

case at hand.  Maldonado v. Fontanes, 568 F.3d 263, 279 (1st Cir. 2009) (citing Hope v. Pelzer,

536 U.S. 730, 741 (2002)).  Sanchez observes that as late as 2010, the First Circuit stated that

"[i]t remains an unanswered question whether a malicious prosecution claim is cognizable under

the Fourth Amendment and section 1983 . . . ." Harrington v. City of Nashua, 610 F.3d 24, 30

(1st Cir. 2010) (citation omitted).  In addition, citing language from Nieves, 241 F.3d at 54 n. 4,

this court suggested in 2005 that the uncertainty regarding Fourth Amendment malicious

prosecution claims *could* entitle a defendant to qualified immunity under the "clearly

established" test.  Hernández-Lopez v. Pereira, 380 F. Supp. 2d. 30, 32 (D.P.R. 2005).  See also

Medina v. Toledo, 718 F. Supp. 2d. 194, 205-06 & n. 7 (D.P.R. 2010) (collecting cases between

2003 and 2005).

Pacheco does not respond to this contention, but his survey of sister circuit law on the question underscores Sanchez's point by identifying "two broad approaches to malicious prosecution claims" in cases through 2003: one that requires a common law tort to be established together with a constitutional violation, and another that only considers the common law tort to the extent it is analogous to an underlying violation.  (Docket No. 14, p. 12-21).

In light of Sanchez's uncontested argument that the state of this branch of section 1983 jurisprudence was not clearly established, he is entitled to qualified immunity on the Fourth Amendment malicious prosecution claims.

## 2.  *Procedural Due Process*

Pacheco also argues that he was the victim of the defendants' "manufacturing of evidence and knowing use of perjured testimony," depriving him of the right to due process at trial. (Docket No. 14, p. 26).  Pacheco and Sanchez agree that substantive due process cannot support a section 1983 claim for malicious prosecution, see Nieves, 241 F.3d at 53-54, but disagree about the scope of the procedural due process guarantee.

Sanchez argues that the existence of malicious prosecution relief under Puerto Rico law bars Pacheco's claims under procedural due process because the existence of a state remedy essentially solves the procedural unfairness.  See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 43 (1st Cir. 1994); Medina, 718 F. Supp. 2d. at 205-06 & n. 8 (collecting cases).  Harkening back to Mooney v. Holohan, 294 U.S. 103 (1935), Pacheco counters that procedural due process provides a constitutional hook when police engage in deliberate deception or fabrication of evidence to obtain a conviction.  (Docket No. 14, p. 21-26).  See Haley v. City of Boston, 657 F.3d 39, 49 n. 3 (1st Cir. 2011) (malicious prosecution theory based on deliberate suppression of evidence "is not an independent claim; rather, it folds into the broader claim that the detectives' conduct violated the plaintiffs' due process rights.") (citing Torres v. Sup't of Police, 893 F.2d

404, 409-10 (1st Cir. 1990)); <u>Limone</u>, 372 F.3d 39, 44-45 (1st Cir. 2004) (fabrication of evidence "necessarily" violates due process).

Sanchez correctly observes in reply that the *Mooney* line of "deliberate deception" cases involve the knowing use of perjured testimony or suppressed exculpatory evidence *at trial*, but then concludes that this renders the entire line inapposite.  (Docket No. 22, p. 5).  I find this analysis at least partly correct; the deliberate deception cases all involved injury to the criminal defendant's right to a fair trial, while cases deferring to state remedies such as *Torres* and *Medina* involved non-trial conduct.

Pacheco's case does not neatly fit into one framework, but it does break down along a clear line:  he has an adequate state tort remedy for the malicious prosecution claim based on any of Sanchez's conduct initiating or furthering the legal process against him, or including any failure to investigate his alibi.  <u>See</u> <u>Torres</u>, 893 F.2d at 409-10.  Any due process violation, then, must arise from the impact on Pacheco's trial.

To that end, the complaint fails to plausibly connect Sanchez with the fabrication or concealment of evidence at his trial.  True, the complaint alleges that Sanchez perjured himself, and it may be inferred that Sanchez participated in an unlawful line-up procedure.  But aside from Sanchez's perjured testimony—for which he is absolutely immune—the only other trial evidence even mentioned in the complaint is that of other witnesses *contradicting* him, lending no support to any broader claims of deliberate deception or fabrication at trial.  "Specific information, even if not in the form of admissible evidence, would likely be enough at this stage; pure speculation is not."  <u>Peñalbert-Rosa v. Fortuño-Burset</u>, 631 F.3d 592, 596 (1st Cir. 2011).  Therefore, Pacheco has failed to allege a due process violation caused by Sanchez.

### 3.     *Section 1983 Conspiracy*

Finally, I address the complaint's numerous references to the conspiracy to deprive

Pacheco of his rights.  To show a conspiracy under § 1983, a plaintiff must have demonstrated

both a "conspiratorial agreement" and "an actual abridgment of some federally-secured right."

Nieves, 241 F.3d at 53.  As explained above, the complaint fails to plausibly establish Pacheco's

personal participation in any of the viable claims; it similarly is devoid of facts from which to

infer that Pacheco was part of any agreement to perjure himself, or that he furthered any of the

other actionable rights-depriving conduct.  Therefore, he is also entitled to dismissal of any

conspiracy theories on qualified immunity grounds.

> **C.      Summary**

Sanchez has shown that, with the exception of conduct for which he is absolutely

immune or for which no right was clearly established, the complaint does not state any claims

against him for violation of a constitutional right.  He is therefore entitled to dismissal on

grounds of qualified immunity.

## III.    Section 1985 Civil Rights Conspiracy

"A section 1985 claim 'requires 'some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action . . . .'" Soto-Padró v. Public

Bldgs. Auth., --- F.3d ---, No. 10-2413, slip op. at 6-7 (1st Cir. Mar. 12, 2012) (citations

omitted).  Sanchez correctly observes that the complaint does not contain any allegations of any

class-based animus, and Pacheco does not contest this.  Sanchez is therefore entitled to dismissal

of this claim.

## IV.     Supplemental Jurisdiction

Once all claims conferring original jurisdiction have been dismissed, a district court has

discretion, assessing "the totality of the attendant circumstances," in deciding whether to retain

supplemental jurisdiction over other claims. 28 U.S.C. § 1367(c); Rodríguez v. Doral Mortgage

Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  Factors informing this exercise of discretion include

judicial economy, convenience, fairness, and comity.  Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)).  But "[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit" counsel dismissal without prejudice. Id.  This case is only at the pleading stage, and discovery has been stayed.  (Docket No. 43). Therefore, judicial economy, convenience, and fairness all weigh towards dismissing the Puerto Rico claims without prejudice.  See Martínez v. Colón, 54 F.3d 980, 990-91 (1st Cir. 1995) (affirming dismissal "far in advance of trial" at summary judgment); cf. Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (finding abuse of discretion where jurisdiction was declined four days prior to trial).

## CONCLUSION

For the foregoing reasons, Sanchez's motion to dismiss is **GRANTED**, and Pacheco's claims are **DISMISSED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2012.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge